## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
May 08 2015, 9:28 am

Kevin S. Smith
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Jill M. Acklin
McGrath, LLC
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Kenneth E. Biggins
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Misty Padgett-Essex, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff* | May 8, 2015 <br><br> Court of Appeals Cause No. 84A01-1407-CR-309 <br><br> Appeal from the Vigo Superior Court <br> The Honorable Michael Rader, Judge <br> Trial Court Cause No. 84D05-1308-FD-2406 |

**Bradford, Judge.**

# Case Summary

[1] Appellant-Defendant Misty Padgett-Essex ("Padgett-Essex") was convicted of theft and received a sentence of three years in November of 2013. Her sentence was divided into one year of direct placement in home detention with the remaining two years suspended to probation. After multiple failures to adhere to the conditions of her home detention, the trial court revoked her direct placement and probation and ordered her to serve the balance of her previously-suspended sentence. On appeal, Padgett-Essex does not dispute the revocation of her home detention and probation, but contends that the trial court abused its discretion by ordering her to serve the remainder of her previously-suspended sentence. We affirm.

# Facts and Procedural History

[2] In August of 2013, Padgett-Essex was charged with theft, possession or use of a legend drug without a prescription, and unlawful possession of a hypodermic syringe, all of which are Class D felonies. She was subsequently sentenced in November of that year, with her sentence divided as follows: (1) one year of direct placement in the Vigo County Community Corrections ("VCCC") home detention program and (2) two years suspended to probation. On January 26, 2014, Padgett-Essex began home detention with VCCC for her conviction.

[3] On March 5, 2014, Padgett-Essex left her residence without authorization for two hours and thirteen minutes. She claimed to have received permission from

VCCC, but could not provide the name of the person with whom she had spoken, nor could she provide any documentation to substantiate that claim.

[4] On March 9, 2014, Padgett-Essex provided false information to VCCC in violation of the home detention rules. Padgett-Essex contacted VCCC and requested permission to go to the grocery store to get medicine. A VCCC coordinator testified that Padgett-Essex used this as a ploy to "get out of the house," knowing that VCCC could not deny her access to medication. Tr. p. 27. The coordinator also testified that "[s]he had used this same tactic several times." Tr. p. 27. The coordinator decided to perform a "field check" on Padgett-Essex during this trip, and found that she had been grocery shopping instead. Tr. p. 27. When asked to show proof that she had purchased medication, she claimed that the receipt had inadvertently been thrown away, and was only able to produce receipts for groceries. Padgett-Essex later provided a receipt for medication, but the date and time on the receipt showed that she purchased the medication later in the day, after the inspection by the field coordinator. As a result of this incident, a non-compliance form was filled out showing that Padgett-Essex had provided false information to VCCC.

[5] On March 13, 2014, Padgett-Essex visited a hospital where she was treated for a panic attack. While there, she was given Xanax, and claimed that she could not recall whether or not she alerted VCCC of her visit to the hospital. According to VCCC regulations, individuals in home detention are allowed to attend medical services in an emergency, but they are required to provide verifying documentation of their trip. Padgett-Essex did not provide any

substantiating documents to VCCC regarding her March 13, 2014 trip to the hospital. On March 18, 2014, Padgett-Essex tested positive for benzodiazepines, while not having a prescription for those drugs, which is also a violation of home detention rules.

[6] On March 17, 2014, Padgett-Essex was fired from her job with the Vigo County Commissioner's Office, which she had gotten via the Volunteer Electronic Monitoring Program in order to help pay for her community corrections. It was reported that she had been sleeping at work, having unapproved visitors, and not meeting the requirements of the program. She was also behind on her payments to community corrections by $1252.00.

[7] On March 19, 2014, Appellee-Plaintiff the State of Indiana (the "State") moved to revoke Padgett-Essex's home detention and probation. An amended petition filed on March 27, 2014, stated that Padgett-Essex had violated the conditions of her home detention by leaving her residence without authorization, providing false information to VCCC, not contacting VCCC after being released from the hospital, being fired from her job at the Commissioner's Office, being in arrears of her fees by $1252.00, and testing positive during a drug screen for benzodiazepines. On June 19, 2014, the trial court ordered Padgett-Essex to serve the balance of her previously-suspended sentence. She was given a total credit of 140 days for her time on home detention and while incarcerated. This appeal follows.

# Discussion and Decision

[8] Padgett-Essex does not dispute that the trial court had sufficient grounds to revoke her home detention and probation. Rather, she argues that the reinstatement of the entire balance of her previously-suspended sentence is an abuse of the trial court's discretion where the "probationer was actively seeking treatment in an effort to become a productive citizen and live a sober life." Appellant's Br. p. 9.

[9] It is well settled that "[p]robation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled." *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). After a trial court orders probation rather than incarceration, it should have broad discretion in deciding how to proceed. *Id*. Indeed, the Indiana statutes governing these discretionary procedures have codified this position. Under Indiana Code section 35-38-2-3(h), when the court finds that a person has violated the conditions of her probation, the court may continue the probation, extend the probation, or order execution of all or part of that person's sentence. This same discretion holds true for placement in community corrections. If a person is found to have violated the terms of her placement, the court may change the terms of the placement, continue the placement, or revoke the placement and order the person to serve the remainder of her sentence. Ind. Code § 35-38-2.6-5. "Both probation and community corrections programs serve as alternatives to commitment to the [Department of Correction] and both are made at the sole discretion of the trial court." *Monroe v. State*, 899 N.E.2d 688, 691 (Ind. Ct. App. 2009).

Accordingly, we will review a trial court's decision to revoke probation and its sentencing decision in a probation revocation proceeding for an abuse of discretion. *Sanders v. State*, 825 N.E.2d 952, 956 (Ind. Ct. App. 2005). Because of similarities between probation and placement with community corrections, we treat a review of a home detention revocation the same as we do a probation revocation. *Monroe*, 899 N.E.2d at 691. "An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances." *Prewitt*, 878 N.E.2d at 188.

Padgett-Essex contends that the trial court abused its discretion by ordering her to serve the entirety of the balance of her previously-suspended sentence "in a case where factors suggest that a sanction of less than serving the balance of the previously-suspended sentence … would have been appropriate." Appellant's Br. p. 4. She argues that the Indiana Supreme Court has noted that an objective in sentencing reform is to give favor to those offenders deserving of an earlier opportunity to be productive citizens. *See State v. Brunner*, 947 N.E.2d 411, 417 (Ind. 2011). However, Padgett-Essex was given that opportunity when she was granted placement with community corrections and probation in lieu of incarceration. Padgett-Essex's case is now before this court because she chose not to take advantage of that opportunity.

Padgett-Essex also points out that the Indiana Supreme Court has stated that, in reviewing and revising sentencing decisions, principles of equity may be considered. *See Woods v. State*, 583 N.E.2d 1211, 1213 (Ind. 1992). Specifically, Padgett-Essex indicates that she had a job at a hotel, had successfully completed

two prior home detention terms, started drug and alcohol treatment, and expressed a desire to live her life clean and sober. She states that she was candid with the court about her struggles with substance abuse and is addressing it while in jail in order to become a more productive citizen.

[13] Despite the fact that Padgett-Essex was working at a hotel and getting treatment, there is no abuse of discretion by the trial court. It is readily apparent that the fault herein lies with Padgett-Essex. "Violation of a single condition of probation is sufficient to revoke probation." *Wilson v. State*, 708 N.E.2d 32, 34 (Ind. Ct. App. 1999). By leaving her home without permission, providing VCCC with false information, not contacting VCCC upon her release from the hospital, losing her job with the Commissioner's Office, falling behind on her payments to VCCC, and failing a drug screen, Padgett-Essex ran afoul of the minimal standards of conduct required of her. Padgett-Essex violated several conditions of her home detention placement, any one of which would have been sufficient to justify the revocation of that placement in its entirety. Thus, the trial court's decision to revoke Padgett-Essex's placement on home detention and probation was not an abuse of discretion. If trial courts were not afforded this discretion and their probation or placement decisions were frequently second-guessed on appeal, trial judges might be less likely to order probation or placement going forward. *Prewitt*, 878 N.E.2d at 188.

[14] The judgment of the trial court is affirmed.

Najam, J., and Mathias, J., concur.